Price, J.
We learn from the petition, which the circuit court sustained when assailed by general demurrer, that at the decennial appraisement in the year 1900, by the action of the decennial district appraisers, the decennial board of equalization and revision, and the state board of’ equalization, the property of The National Land & Investment Company, defendant in error, was valued for the purposes of taxation for the decade to 1910, at $16,380, and it was so entered on the tax duplicates of the county and remained until the year 1905. No increase in the value of the real estate occurred since the year 1900, except such increase as was common to other real property in Lucas county, and no new structure has been erected on the property since the decennial appraisement of 1900.
In the year 1905 the board of review of the city óf Toledo concluded to revalue or reappraise twelve blocks of real estate near the heart of the city, of which the premises of defendant in error is a part,. and to that end the board ordered its clerk to file complaints against the existing valuation of the property in said blocks, which order the clerk obeyed. No complaints were filed by any one else.
*428 The board notified the owners of real estate in the said blocks of a time and place of hearing, .which notice recited, “when said board will consider and act upon a petition to review for taxation and to revalue and equalize the valuation of real estate, etc.”
At the hearing, testimony was heard as to the value of the real estate in the year 1905, but none was considered as to the value of the same property at the time of the last decennial appraisement. The board revalued the property of the defendant in error at $24,810, an increase of about fifty per cent. This revaluation was certified by the board to the auditor of the county, and after he placed the same on the duplicates, they were delivered to the county treasurer for collection in the year 1905. The treasurer refused to accept the taxes according to the decennial appraisement, but demanded the taxes based on the increased valuation. The circuit court, on a petition for that purpose, awarded an abatement of the additional burden and enjoined the collection of the taxes as to the increase of valuation.
The rather novel proceedings of the board of review are attempted to be justified by certain sections of the Revised Statutes, from which are selected as giving clear authority, Sections 2804, 2805 and 2819-1; and they will now receive our attention.
Section 2804 provides for an annual county board of equalization “for the equalization of real and personal property, moneys and credits in each county, to be composed of the county commissioners and county auditor, who shall meet for that purpose at the auditor’s office in each county, *429 on Wednesday after the third Monday in May, annually.”
The section proceeds to say:
“Said board shall "have power to hear complaints, and to equalize the valuation of all real and personal property, moneys and credits within the county, and shall be governed by the rules prescribed for^the government of decennial county boards for the equalization of real property; provided, that said board shall not reduce the value of the real property of the county below the aggregate value thereof as fixed by the state board of equalization, nor below its aggregate 'value on the duplicate of the preceding year, to which shall be added the value of all new entries and new structures over the value of those destroyed, as returned by the . several township assessors for the current year; provided further, that except as to new structures, and structures destroyed, and lands and lots.brought onto the tax list since the preceding decennial state board of equalization, the annual county board shall not increase or reduce the valuation of any real estate, except upon reasonable notice to all persons directly interested, and an opportunity for a full hearing of the question involved. Said board is authorized, by its president, or presiding officer pro tem.,- to administer oaths, call persons before them, and examine them under oath as to their own or other’s property, moneys, credits and investments to be placed on the duplicate for taxation, or the value thereof, and order any property, moneys, credits or investments to be placed on the duplicate, which have not been listed for taxation, and fix the value thereof according to *430 law,, and .increase the valuation of such property, moneys, credits and investments as have, in their judgment, been listed at less than their true value in .money, and reduce the value of such as have been appraised above their true value in money.” * * *
Section 2805 relates to the powers and duties of annual city boards of equalization, and the part thereof which is important here reads:
“Said'board shall have all the powers, and be governed by the rules, provisions and limitations prescribed in the next preceding section, for the annual county board; each member of said board is authorized to administer oaths, and said board is empowered to call persons before them, and examine them, under oath, in regard to their own or' others’ property, moneys, credits and investments, and the value thereof, and to equalize the value of real and personal property, moneys, credits and investments within such cities, and to order any property, credit or investment to be placed on the duplicate for taxation, and fix the value thereof according to law, which has not been listed for taxation, and to increase the value of such property, moneys, credits and investments as have; in their judgment, been listed at less than their true value in money, and to reduce the value of such property, moneys, credits or investments as have been’ appraised above their true value in money.” * ‡ „
Section 2819-1 provides for powers of a board of review for municipalities, and the part pertinent to the present controversy reads:
“Said board of review shall, within and for their respective municipalities have all the powers *431 and perform all of the duties heretofore conferred upon or required of the annual city board for the equalization of the value of real and personal property, moneys and credits; the decennial city board, for the equalization of the value of real property; the annual city board of revision; and the decennial city board of revision,, under any and all laws now in force, pertaining to such municipalities. And said board of review shall be the successor of said board of revision, said annual city board and said decennial city board, all of which boards shall upon the appointment of a board of review in any municipal corporation under this act be abolished. Said board of review shall have power to hear complaints and to equalize the valuation of real and personal property, moneys and credits within such municipal corporation as said board of review may be located, and shall be governed by rules prescribed for the government of decennial county and city boards, and annual county and city boards, for the equalization of real and personal property.”
Inasmuch as two of these sections refer to thq rules by which the board of equalization in one case, and the board of review in the other, should be governed, it is proper now to state the rules which are prescribed for decennial county and city boards of equalization, and they are found in Section 2814, Revised Statutes. It is there provided as to the decennial board that the auditor shall lay before the board the returns made by the district assessors, with the additions which he shall have made thereto; and they shall then ■ immediately proceed to equalize such valuation, so that *432 each tract or lot shall be entered on the tax list at its true value, and that for this purpose they shall observe the following rules:
“1st. • They shall raise the value of such tracts and lots of real property as, in their opinion, have been returned below their true value to such price or sum as they may believe to be the true value thereof agreeably to the rule prescribed by this title for the valuation thereof.
“2d. They shall reduce the valuation of such tracts and lots as, in their opinion, have been returned above their true value, as compared with the average valuation of real property of such county, having due regard to their relative situation, quality of soil, improvement, natural and artificial advantages possessed by each tract or lot.
“3d. They shall not reduce the aggregate value of the real property of the county below the aggregate value thereof as returned by the assessors, with the additions made thereto by the auditor as hereinbefore required.” The provision is made that such county decennial board of equalization may be called to sit as a board of revision which may hear complaints and equalize value where necessary: -
■Similar rules are provided for the government of decennial municipal boards. See. Section 2816, Revised Statutes.
While treating upon the powers, duties and limitations of decennial county and city or municipal boards, it becomes natural to look at the further use made of their proceedings by the decennial' state board, for after the decennial county and municipal boards have performed their work of equalizing and revision, where revision is provided *433 and called for, the case is made ready for the state decennial board, and it is made the duty of each county auditor to make out and transmit to the auditor of state the information required by Section 2817, and perhaps other sections not material here. The state board is required to equalize the valuation of real property among the several counties and towns in the state according to rules prescribed by the statute. When the state board of equalization has completed its work of equalization, the auditor of state shall transmit to, each county auditor a statement of the per centum to be added to or deducted from the valuation of the real property of his county, specifying the per centum added to or deducted from the valuation of the real property of each of the several towns, and of the real property not in towns, etc. The state board deals with the towns and counties and may increase or decrease the valuation of a county or town by a certain per centum. It does not deal with individual owners. It then becomes the duty of each county auditor to make the additions and deductions of the per centums so certified to him. When all this has been done, there is further need for the county and city boards of equalization, and there is a time fixed in which they shall complete their work of equalization. See Section 2819, Revised Statutes.
Thus we see the details of the state decennial appraisement of all the real property of the state, and the careful arrangement of details from the work of the decennial district land assessor to and through the different boards and the state board, so that an equitable valuation may be arrived at, and which should be the basis of all levies for the decade next ensuing.
*434 This view is somewhat advanced by a consideration of the latter part of Section 2792 and supplemental Section 2792a. These provisions are amendatory of and supplementary to the statutes authorizing and regulating the decennial appraisement of real estate. The latter part of the former section provides “that the annual board of equalization may reduce the mineral value assessed against lands containing or producing petroleum, (oil), natural gas, coal, ore, limestone, fire clay, or other minerals in • proportion as the product of such mineral has diminished, if such mineral product was considered as a part of the value of said real estate in its previous appraisement for taxation,” etc.
Section 2792a (97 O. L., 294) supplementing the former, provides, in substance, that in all cases where the fee of both the soil and the minerals — except crude petroleum and other like sub-stances — of any lot or parcel of land were owned by the same person or persons, when the last decennial appraisement was made, but the title of the fee of the soil is now in one or more persons, and the title to such minerals, or any of them, is now in another person or persons, it shall be the duty of the county board of equalization, at its annual meeting each and every year, other than decennial year, to divide or apportion the valuation of such tract or parcel of lands made at' the next preceding decennial appraisement, between the owner of the fee in the soil and the owner of such minerals, so held separate from the fee of the soil, equitably, according to the relative value of the interests so held by such owners of the fee of the soil and such minerals respectively; *435 such division or apportionment shall be and remain in force until the next decennial appraisement.
In such cases there is no increase in the taxable valuation under these sections, but a division and apportionment of values between the owner of the soil and the owner of the minerals, which shall stand until the next decennial appraisement.
These various provisions develop a scheme of general and equal appraisement of all the real property of the state, which, unless in excepted cases should stand during the decennial period. The policy of the legislation indicates that the state desired a fixed basis whereon to calculate its revenues which would not be affected by reduction during a certain period of years; and we think it is also within that policy that the owner of real estate should have, during the same period, repose from frequent changes in valuation, and he is entitled to that, unless the statute gives plain authority to the subordifnate boards to make such changes. The above statement of the general method and scheme of decennial land appraisal takes us back to the sections of the Revised Statutes which we have first quoted, and the inquiry is renewed — do they justify and authorize the proceedings complained of in the petition?
Section 2804 defines the powers and duties of a county board of equalization, and it “shall have power to hear complaints and equalize the valuation of all real and personal property, moneys and credits within the county, and shall be governed by the rules prescribed for the government of decennial county boards for the equalization of real *436 property; provided, that said board shall not reduce the value of real property of the county below the aggregate value thereof as fixed by the state board of equalization, nor below the aggregate value on the duplicate of the preceding year. * * *” As to new structures, and structures destroyed,' and lots and lands brought on to the tax list since the preceding decennial state board of equalization, the county board may increase or reduce the valuation of real estate without notice, but- as to other real estate, notice and an opportunity to be heard .must be given to all persons directly interested. Persons may be examined under oath as to their, own and the property of others. The value of such' property may be increased where it has been listed at less than the true value, and the value may be reduced where the property was listed at too high a value.
When we take up Section 2805, providing for annual city boards. of equalization, we find its terms substantially like those of 2804. Each board is primarily one of equalization, and to carry out the work of equalization, the limitations and'rules prescribed for the government of decennial county, boards -apply, and we have already quoted these rules.
It is important to bear in mind these rules and limitations because Section 2819-1, defining the powers and duties of the new board of review, says it shall, within and for their respective municipalities, have all the powers and perform all the duties heretofore conferred upon or required of fhe annual city board for the equalization of the value of real and personal property, etc.; the decennial city board for the equalization of the *437 value of real property; the annual city board of revision, and the decennial board of revision * * *. This board of review became the successor of the board of revision, said annual city board, and said decennial city board. The section proceeds: “Said board of review shall have power to hear complaints and to equalise the valuation of real and personal property, moneys and credits within such municipal corporation, g.s said board of review may be located, and shall be governed by rules prescribed for the government of decennial county and city boards, and annual county and city boards for the equalization of real and personal property.”
We have already seen the scope and limitations on these several boards referred to.
What is the practical meaning of this language concerning ail increase or reduction in values mentioned in this and the other sections where found? Does it' mean that the board may arbitrarily increase the value of real estate during' the ■ decennial period, and do nothing more? Or, does it contemplate that when the board finds on complaint, that some real estate has been listed too high, and other real estate in the same locality or district has been listed too low, producing a case of gross inequalities, the one may be reduced and the other increased, and they, with other real property affected, substantially equalized? The latter seems to be the more reasonable construction.
It would not be proper or necessary to increase a low valuation, unless relief is at the same time granted to one or more whose real property has been listed too high. Again, if there is no instance where property was valued too' low, a reduction of the high valuation of other property could not *438 be made without reducing the aggregate, which is forbidden. So it was the rule followed by the decennial county and city boards of equalization, that where the district real estate assessor returned certain real estate at a valuation too high, and other real estate too low, the board could take from one and add to the other in the process of equalization, and so in like instances until that work was complete. That was one of the working rules of the city decennial board of equalization, whose duties are now vested in boards of review of such municipalities as are entitled to the same under the'statute; and we think that the boards of review, being clothed with powers of equalization, are to be governed by the spirit of the rule which has generally been followed as to the increase and reduction in real estate values. Indeed, the latter part of Section 2819-1 expressly provides that the board “shall be governed by the rules prescribed for the government of decennial county and city boards, for the equalisation of real and personal 'property.”
Again we see that equalisation is the paramount purpose and design of the statutes creating these different boards. To increase values serves only half of the legislative design, and that is legitimate only when the statutory machine performs its other functions as we recognize them. All the different statutory provisions relating to appraisement, revision, increase and reduction in real estate values and their equalization must be considered and so construed, if possible, as to make a just and harmonious system, not so much to unnecessarily increase as to equalize burdens.
It is therefore, evident from the different sec *439 tions, when. we compare their terms, that there are some things which the city board of review is clearly authorized to do. It may review the returns of new entries, and the valuation of lands' newly platted which are in the corporation; the value of new structures as returned and the value of structures destroyed as returned and lots and lands restored to the tax list. Such a proceeding would almost necessarily require readjustment and equalization, and if in the course of said readjustment and equalization it is found in any case that certain real estate, as compared with other real estate in the locality, has been listed too low, and other real estate - listed too high, so that gross inequalities exist, the values may be increased or reduced as justice demands. But this increase in value may not be made arbitrarily, but in the process of equalization, which seems to be the paramount purpose of such boards. They are not boards of original appraisal, and such power to increase must be exercised, if at all, in connection with the primary work of equalization. There are also some things a board of review can not do. It may not reduce the value of the real property of the city below the aggregate value thereof as fixed by the state board of equalization, nor below its aggregate value on the duplicate of the preceding year. Such acts are expressly forbidden by the sections quoted.
It seems quite clear also that an increase in the valuation of realty can not be made except on complaint, and such complaint as we will later define.
According to the petition, what was the board *440 of review doing and attempting to do when the action tinder review was commenced?
It was not undertaking to show that the rea] estate involved was listed too low when the decennial appraisal was complete, but that the value as listed was too low in the year 1905 — in the middle of the decennial period. Certain sections of the city of Toledo were selected as its field of operations. No one had requested the proceeding, except the clerk of the board, and his complaint .was filed under order of the board itself. There was no general movement to increase the taxable value of real estate of Lucas county, outside of Toledo, or of any real estaté anywhere outside the cities of the state, although the petition avers that the real estate outside the various cities has increased in value by a greater ratio than the increase in city real estate. And if the petition is true, as the demurrer admits, there was not in progress a general movement to raise the taxable value of the real estate in Toledo; and in this case it is said that the board did not take testimony or inquire into the relative value as between the lots' in question and other realty in the city.
Lienee, if we concede all that was attempted to be decided in Mitchell & Watson v. The Treasurer of Franklin Co., 25 Ohio St., 143, and in State, ex rel. Poe, v. Raine, 47 Ohio St., 447, cited by plaintiff in error, the action of the Toledo board of .review can not be sustained. Its course of procedure, as described in the petition, is in violation of the rules prescribed by the statftte heretofore stated.
The question .in the former case was different from ours, and different statutes were being con-. *441 strued, as is apparent from the syllabus and statement of the case. The court was badly divided on the question decided, but in the opinion of Mc-Ilvaine, C. J., .there is some encouragement for the rule, that an annual board of equalization may increase the value of real estate within its jurisdiction under stated circumstances, which circumstances are absent in the present case. In the latter case, State, ex rel. Poe, v. Raine, questions unlike ours were decided, as a reading of the syllabus makes plain. Yet we are not at war with what was said in the opinions delivered in those and other, Ohio cases cited for plaintiffs in error, so far as they refer to the authority of a county auditor or an annual county or city board of equalization. ' The force of those opinions should be measured by the facts directly involved, just as in any other case decided by the court. If this board of review can radically change the decennial appraisal for the reasons adopted in 1905, the same thing may be done each year thereafter, and taxable values will be constantly fluctuating, and the taxpayer be kept in continuous turmoil. If the board can revolutionize the decennial appraisal in 1905, it could have done so in 1902, 1903 or 1904. The decennial appraisement, which many have been led to think amounted to something, would become a mere plaything, and might as well be abolished. But we are not yet ready to concede the authority for such a practice, or such fate of a decennial appraisal.
Another fact appears here that defeats the work of the board ‘complained of in the petition. The “complaint,” or “complaints,”, are made by the clerk of the board under its direction. No inter *442 ested taxpayer seems to have come forward to demand a readjustment of real estate values. Is the statute complied with by the filing of complaint by the clerk? If a case of perpetual motion is desired, such practice would be convenient, but it is not an automatic action that the statutes recognize or allow, but there must be a real complaint by some one interested in having a change of valuation and an equalization within the rules of the law. Substantial interests of many owners may be involved, and the review or revision should be started legally as well as conducted legally.
The plaintiffs below urge the constitutional invalidity of the act creating the board of review, on grounds alleged in the petition and pointed out in the brief. But following the well-settled rule of this court, it does not become necessary for us to pass on that question, inasmuch as ample relief is granted on the other averments of the petition.
The judgments of the circuit court are affirmed.

Judgments affirmed.

Shauck, C. J., Crew, Summers and Davis, JJ., concur.